## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Esther Jenke**
Hainholz 66a
22453 Hamburg
Federal Republic of Germany

**Jane Rachel Heller**
Oudeweg 38-4
9711TM Groningen
Kingdom of the Netherlands

**Nina Nelson**
12 rue des Vignes
77500 Chelles
France

**Arianna Poli**
2A Meyer place
437990 Singapore
Republic of Singapore

Case No.

*Plaintiffs,*

*v.*

**United States of America**
The Executive Office,
Office of the Legal Adviser
19th Street NW.
Washington DC 20522

*Defendant*

## CLASS ACTION COMPLAINT

L. Marc Zell
D.C. Bar No. 959437
ZELL & ASSOCIATES INTERNATIONAL
ADVOCATES, LLC
1345 Ave. of the Americas
2nd Floor
New York, NY 10105
(212)-971-1349
*Email:* *mzell@fandz.com*

Noam Schreiber,
*pro hac vice to be filed*
34 Ben Yehuda St.
14th Floor
Jerusalem, Israel 9423001
011-972-2-633-6300
*Email:* *noam.schreiber@fandz.com*

*Counsel for Plaintiffs*

## PRELIMINARY STATEMENT

1.      For almost a decade – since September 2014 – the U.S. government has been charging an astronomical fee of $2,350 as a condition for U.S. citizens to voluntarily renounce their U.S. citizenship ("Renunciation Fee"). The right to renounce one's citizenship is protected by the United States Constitution and by statute. For most of American history (prior to 2010), a U.S. citizen could exercise this fundamental right to renounce free of charge.

2.      In 2020, several individual plaintiffs and a Paris-based non-profit organization, L'Association des Américains Accidentels ("AAA"), filed suit in the United States District Court for the District of Columbia challenging the constitutionality and legality of the Renunciation Fee. *L'Association des Américains Accidentels et al. v. United States Department of State, et al.*, 1:20-cv-03573 (TSC) ("*AAA v. DOS*").

3.      A few days before oral argument on summary judgment in *AAA v. DOS*, the government unilaterally notified the court of its intention to lower the fee to $450 (the amount it charged between 2010 and 2014). The new rule finalizing the reduced fee has not yet been published.[1]

---

[1] On information and belief, an interim final rule – entitled *Schedule of Fees for Consular Services – Administrative Processing of Request for Certificate of Loss of Nationality (CLN) Fee* – was submitted to the Office of Information and Regulatory Affairs (OIRA) pursuant to Executive Order 12866, 58 Fed. Reg. 51735, 1993 WL 13149641 (Sept. 30, 1993), *as amended and supplemented.* In accordance with the Executive Order, counsel timely requested a meeting to discuss the proposed rule which was duly scheduled. However, in August 2023, OIRA notified counsel that its "regulatory review has already been concluded" and the meeting was cancelled. On

4.      The government's decision to reduce the Renunciation Fee by some 81% was a direct and proximate result of the *AAA v. DOS*.

5.      Since 2014, the U.S. government has been wrongfully profiting from charging this exorbitant fee and has been unjustly enriched at the expense of the Plaintiffs and those similarly situated.

6.      The Renunciation Fee violated Plaintiffs' fundamental and natural right to expatriate. Moreover, the fee was arbitrary, capricious and illegal because, among other things, it was used to fund governmental functions completely unrelated to renunciation services in violation of federal law as more fully alleged below.

7.      This class-action lawsuit seeks to hold the government accountable for its illegal charge and unjust enrichment by ordering the government to reimburse the Plaintiffs and tens of thousands of other former U.S. citizens who were forced to expend $2,350 simply because they elected to renounce their citizenship as was their right under the United States Constitution and federal law.

**SUBJECT MATTER JURISDICTION AND VENUE**

8.      The Court has subject matter jurisdiction under 28 U.S.C. §1331 because this case is a civil action arising under the Constitution and laws of the United States.

9.      Alternatively, this Court also has subject-matter jurisdiction under 28 U.S.C. §1346(a)(2) because the individual Plaintiffs' claims and those of the putative

---

October 2, 2023, the Department of State published the proposed rule to lower the $2,350 fee to $450. *See* 88 Fed. Reg. 67787 (Oct. 2, 2023).

class do not exceed $10,000 and are founded upon the Constitution, an act of Congress, and regulations of the Department of State.

10.     Venue is proper in this Court under 28 U.S.C. §1391(e)(1) because Defendant Department of State is an agency of the United States and is headquartered in the District of Columbia.

## PARTIES

**Plaintiffs**

11.     Plaintiff Esther Jenke is a resident and citizen of the Federal Republic of Germany. Up until November 28, 2018, Esther Jenke had U.S. citizenship. On that date, Esther Jenke paid the Renunciation Fee and renounced her U.S. citizenship by appearing at the U.S. mission in Germany and taking the renunciation oath as required by law (see below).

12.     Plaintiff Jane Rachel Heller is a resident and subject of the Kingdom of the Netherlands. Jane Heller previously had U.S. citizenship. On or about November 18, 2015, Jane Heller paid the Renunciation Fee and renounced her U.S. citizenship by appearing at the U.S. mission in the Netherlands and taking the renunciation oath as required by law.

13.     Plaintiff Nina Nelson is a resident and citizen of the French Republic. Up until November 15, 2022, Nina Nelson had U.S. citizenship. On that date, Nina Nelson paid the Renunciation Fee and renounced her U.S. citizenship by appearing at the U.S. mission in France and taking the renunciation oath as required by law.

3

14.     Plaintiff Arianna Poli is a citizen of the French Republic residing in the Republic of Singapore. Up until August 29, 2022, Arianna Poli had U.S. citizenship. On that date, Arianna Poli paid the Renunciation Fee and renounced her U.S. citizenship by appearing at the U.S. mission in Singapore and taking the renunciation oath as required by law.

**Defendant**

15.     Defendant United States of America, through the Department of State, administers the voluntary renunciation process, and collected the Renunciation Fee from Plaintiffs and the members of the putative class. Defendant will sometimes be referred to in the Complaint as "DOS."

**STANDING**

16.     Plaintiffs in this action have standing.  Plaintiffs have sustained injury-in-fact because they were forced to pay an excessive fee as a precondition to exercise their constitutional and statutory right to renounce their U.S. citizenship.

17.     Plaintiffs' actual injury-in-fact is a direct and proximate result of Defendant's actions and inactions as alleged.

18.     As to redressability, the relief Plaintiffs seek is within the power of the Court to grant and, if granted, would fully redress the injury by ordering Defendant to return the excessive amount of the Renunciation Fee to Plaintiffs along with other relief as further alleged and prayed for below.

## STATUTORY AND LEGAL FRAMEWORK

A. **The voluntary renunciation process**

19.    The current procedure by which an individual can exercise his/her right to voluntarily expatriate is set forth in Section 349(a) of the Immigration and Nationality Act of 1952, as amended, codified at 8 U.S.C. §1481(a) [sometimes referred to as the "INA"].  This statute sets forth the various ways by which a U.S. citizen can relinquish or renounce her U.S. citizenship.

20.    Section 1481(a)(5) provides that a U.S. national "shall loose his nationality" by making a "formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State."

21.    Expatriation by way of voluntary renunciation can only occur once the applicant has paid the $2,350 fee and made a formal renunciation statement before a consular official.

22.    The detailed procedures for voluntary renunciation are set forth in the Code of Federal Regulations and in the DOS Foreign Affairs Manual ("FAM").[2] Under 22 C.F.R. §50.50,

> [a] person desiring to renounce U.S. nationality under section 349(a)(5) of the Immigration and Nationality Act [8 U.S.C. §1481(a)(5)] shall appear before a diplomatic or consular officer of the United States in the manner and form prescribed by the Department. The renunciant must include on the form he signs a statement that he absolutely and

---

[2] The FAM is the "comprehensive, and authoritative source for the Department's organization structures, policies, and procedures that govern the operations of the State Department, the Foreign Service and, when applicable, other federal agencies." https://fam.state.gov/.

> entirely renounces his U.S. nationality together with all rights and privileges and all duties of allegiance and fidelity thereunto pertaining.

23.     In accordance with 7 FAM 1260, when the applicant appears before a consular officer, she is instructed to read Form DS-4081 which contains twelve statements that must ultimately be declared by the renunciant and attested to by the consular officer.  After reading Form DS-4081, the renunciant signs the form. 7 FAM 1262.4(b).  Next, the renunciant must read the one-page Form DS-4080, entitled "Oath/Affirmation of Renunciation of the Nationality of the United States," ("Renunciation Oath") and then sign it. 7 FAM 1262.4(c). Form DS-4080 is publicly available online, https://eforms.state.gov/Forms/ds4080.pdf.

24.     As discussed in more detail below, since 2014, a renunciant (including each of the Plaintiffs) was required to pay a $2,350 fee prior to signing DS-4080 and as a precondition for renouncing citizenship. 22 C.F.R. §22.1; 7 FAM 1262.4.[3]

25.     After signing the DS-4080 and paying the fee, the consular officer forwards the forms and documents, including his/her recommendations to the Bureau of Consular Affairs within the DOS for final approval. *See* 7 FAM 1264 and 7 FAM 1220. If approved, the consular officer overseas provides the applicant with a

---

[3] 7 FAM 1262.4:

> Under Federal regulations at 22 CFR 22.1, an administrative processing fee applies to documenting renunciation of U.S. nationality.  The fee should be collected after the individual has decided to proceed with the renunciation and has arrived at post to take the oath of renunciation.  *The fee should be collected before conducting the ceremony and administering the oath.*

(emphasis added)

Certificate of Loss of Nationality ("CLN"). Renunciation occurs at the time the U.S. citizen appears before the consular official and signs the Renunciation Oath. All Plaintiffs received their CLN.

### B.  The imposition of the first renunciation fee

26.    The INA and the regulations promulgated thereunder do not specifically authorize the DOS to set and collect fees from potential renunciants. Rather, to impose such fees the DOS has invoked the Independent Offices Appropriations Act ("IOAA"), 31 U.S.C. §9701 as a source for its authority. That statute provides as follows:

> The head of each agency […] may prescribe regulations establishing the charge for a *service or thing of value provided by the agency* [emphasis added]. Regulations prescribed by the heads of executive agencies are subject to policies prescribed by the President and shall be as uniform as practicable. Each charge shall be—
>    (1) Fair; and
>
>    (2) based on-
>
>        (A)   the costs to the Government;
>        (B)   the value of the service or thing to the recipient;
>        (C)   public policy or interest served; and
>        (D)   other relevant facts.[4]

27.    Prior to 2010 and for approximately 200 years, the government did not charge a fee as a precondition to voluntarily expatriate.

28.    In 2010, the DOS issued a Notice of Proposed Rulemaking ("2010 NPRM"), recommending imposing for the first time in American history a fee for

---

[4] The government also has relied upon OMB Circular No. A-25, Executive Order 10718 of June 27, 1957 and 22 U.S.C. §4219 as sources of its authority to levy the renunciation fee.

voluntary renunciation under 8 U.S.C. §1481(a)(5). 75 FED. REG. 6321 (Feb. 9, 2010).

DOS set the fee at $450.

29.     As noted in the 2010 NPRM, the DOS claimed that it adjusts fees

accordingly so that the actual cost of services provided is covered by the fees actually

paid. The proposed changes were based on a cost-of-services study ("CoSS") that the

DOS authorized to study the fee structure to determine whether the DOS was fully

recovering the costs of services.  The rule went into effect on July 13, 2010 and became

final on February 2, 2012. 75 FED. REG. 36522 (June 28, 2010); 77 FED. REG. 5177

(Feb. 2, 2012).

## C. The DOS increases the renunciation fee to $2,350

30.     On August 28, 2014, the DOS issued an interim final rule, adjusting the

fee for the renunciation of citizenship from $450 to $2,350, a five-fold increase. 79

FED. REG. 51247 (Aug. 28, 2014). The 2014 interim final rule went into effect on

September 6, 2014, and became final on August 25, 2015. 80 FED. REG. 51464 (Aug.

25, 2015). The government has been collecting the augmented Renunciation Fee since

September 2014.

31.     As of the filing of this lawsuit, that rule is still in effect and the

government continues to collect the excessive fee.

## D. *AAA v. DOS* and the government's notice to decrease the fee

32.     On December 8, 2020, *AAA v. DOS,* was commenced challenging the

constitutionality and legality of the Renunciation Fee under the Fifth, First and

Eighth Amendments, as well as the Administrative Procedure Act, 5 U.S.C. §500 *et seq*. and under customary international law.

33.   The government moved to partially dismiss and for summary judgment. Plaintiffs opposed and filed a cross-motion for summary judgment.

34.   Oral argument on the government's motions and plaintiffs' cross-motion was set for January 9, 2023.

35.   On Friday, 5:19 EDT, January 6, 2023, less than three days before oral argument in the district court, the government filed a "Notice of Intent to Pursue Rulemaking to Reduce Fee Amount" ("Fee Reduction Notice").

36.   Notwithstanding the Fee Reduction Notice, on February 10, 2023 the district court granted the government's motion for summary judgment and denied plaintiffs' cross-motion as to all counts. *L'Association des Americains Accidentels v. United States Dep't of State*, 2023 WL 1963921 (D.D.C. Feb. 10, 2023).

37.   The *AAA v. DOS* plaintiffs appealed the decision on February 13, 2023 to the United States Court of Appeals for the District of Columbia Circuit.

38.   By joint motion of the parties, the appeal was held in abeyance pending the issuance of the final rule formally reducing the renunciation fee.  That appeal remains stayed.

**Class Action Allegations**

39.   This action is being brought as a class-action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

40.   Plaintiffs seek certification for the following class:

9

**ALL INDIVIDUALS WHO HAVE SIGNED AND SUBMITTED A DS-4080 SINCE SEPTEMBER 6, 2014 AND WHO PAID THE $2,350 RENUNCIATION FEE.**

41. The conditions of Rule 23(a) of the FRCP are satisfied in this case:

A. The class is so numerous that joinder of all members is impractical. The precise number and identity of all members is unknown at this time and can only be ascertained through discovery. On information and belief, based on public date, the number of class members exceeds 30,000.

B. There are questions of law and fact common to all members of the class. These questions include, but are not limited to, the following:

   i. Whether, in light of the government's Fee Reduction Notice, payment by Plaintiffs and putative class members was excessive under the Fifth Amendment Due Process Clause, the APA and the IOAA.

   ii. Whether the Plaintiffs and putative class are entitled to a reimbursement of that portion of the Renunciation Fee in excess of $450, to wit: $1,900?

C. Plaintiffs' claims are typical of the claims of the class because they, like the class members, paid the excessive fee in order to renounce their U.S. citizenship.

D. Plaintiffs will fairly and adequately protect the interests of the class because each of them has paid the $2,350 fee to renounce during the class period, their interests do not conflict with the interests of the class,

10

and they have obtained (or will obtain) counsel experienced in litigating

class actions and matters involving similar questions of law.

42.    The conditions of Rule 23(b)(3) of the FRCP are also satisfied in this

case:

A. The questions of law or fact common to the members of the class

predominate over any questions affecting only individual members. Each of

the claims of the Plaintiffs and the members of the putative class is

identical, as is the amount of the claimed refund; and

B.  A class action is superior to other available methods for fairly and

efficiently adjudicating Plaintiffs' claims, given that the individual claims

are in the amount of $1,900. Prosecution of the claims individually would

be cost-prohibitive to Plaintiffs and class members and unduly burdensome

for the Court.

43.    Accordingly, class certification is proper under these circumstances.

## CAUSE OF ACTION

### UNLAWFUL FEE

44.    Plaintiffs incorporate by reference all the allegations above.

45.    Plaintiffs are entitled to a refund of the excessive Renunciation Fee

under the **(a)** Fifth Amendment's Due Process Clause; **(b)** APA, 5 U.S.C. 706(2); and

**(c)** 31 U.S.C. §9701.

46.    Plaintiffs have a fundamental and natural right to renounce their

United States citizenship. This right is protected by the Due Process Clause of the

Fifth Amendment. The government's imposition and collection of the Renunciation Fee infringed upon Plaintiffs' fundamental right to voluntarily renounce their U.S. citizenship.

47.     In addition, under the APA, the imposition and collection of the $2,350 fee was arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. 706(2). The imposition and collection of the Renunciation Fee over and above $450 was and remains arbitrary and capricious, in contravention of the APA.

48.     In addition, the imposition and collection and the Renunciation Fee in excess of $450 was and remains not in accordance with law, specifically, 31 U.S.C. §9701 and 8 U.S.C. §1481(a)(5).

49.     Section 9701 prohibits the government from collecting fees for services that are not needed to cover *directly* related expenses incurred in providing such services.

50.     The Renunciation Fee was excessive and in violation of §9701 because **(1)** the fee is unfair and, as previously alleged, unconstitutional (*see* above); and **(2)** the fee is **(a)** not based on the real costs to the government; **(b)** not based on the value of the service to the recipient; and **(c)** not based on proper public policy.

51.     The government's imposition and collection of the Renunciation Fee was and remains excessive and in violation of §9701 also because the government was not providing a thing of value. In collecting the fee and administering the Oath of Renunciation, the government is not providing a service or a benefit (akin to a

license); it is merely facilitating U.S. citizens in the exercise of their rights guaranteed by the U.S. Constitution and federal law.

52.     The Renunciation Fee was in violation of §9701 for the additional reason that the government utilized the fee to finance expenses unrelated to the provision of renunciation services.

53.     The Renunciation Fee exceeds the authority granted by Congress under the INA, 8 U.S.C. §1481(a)(5) which does not authorize DOS to charge excessive fees for the exercise of the right to expatriate voluntarily. 5 U.S.C. §706(2)(C).

54.     Accordingly, because the imposition and collection of the $2,350 fee was and remains (a) unconstitutional and (b) illegal under the APA and the IOAA, Plaintiffs are entitled to the refund of the excessive portion of the Renunciation Fee, to wit $1,900.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment in favor of Plaintiffs against Defendant, as follows:

(a) Certify this action as a class action under Federal Rule of Civil Procedure 23(b);

(b) Appoint undersigned counsel as interim class counsel pending certification of the class described above;

(c) Declare that the Renunciation Fee in excess of $450 was and is unlawful;

(d) Order Defendant to refund the amount of $1,900 to each of the Plaintiffs and members of the putative class or such other amount as the Court may determine;

(e) Award Plaintiffs their costs, expenses and attorney's fees pursuant to 28 U.S.C. §2412; and/or from a common fund; and/or under Rule 23(h) of the Federal Rules of Civil Procedure; and/or under any other applicable source;

(f)      Grant such other and further relief as the Court may deem just and proper.

<u>Date</u>: October 4, 2023.

Respectfully submitted,

| | |
|---|---|
| L. Marc Zell | Noam Schreiber, |
| D.C. Bar No. 959437. | *pro hac vice to be filed* |
| ZELL & ASSOCIATES INTERNATIONAL | 34 Ben Yehuda St. |
| ADVOCATES, LLC | 14th Floor |
| 1345 Ave. of the Americas | Jerusalem, Israel 9423001 |
| 2nd Floor | 011-972-2-633-6300 |
| New York, NY 10105 | *Email:* noam.schreiber@fandz.com |
| (212)-971-1349 | |
| *Email:* mzell@fandz.com | |
| (not admitted in New York) | |

*Counsel for Plaintiffs*